UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD WHITE,

                Petitioner,

v.

ROBERT A. KIRKPATRICK,

                Respondent.

**REPORT AND RECOMMENDATION**

07-CV-00499(A)(M)

---

Petitioner Richard White, an inmate acting *pro se*, filed a petition under 28 U.S.C. §2254 for a writ of habeas corpus on July 31, 2007 [1].[1] Hon. Richard J. Arcara has referred the case to me to hear and report on all dispositive motions [13]. For the following reasons, I recommend that the petition be denied.

**BACKGROUND**

On April 9, 2004, petitioner was arraigned on two counts of robbery in the second degree and one count each of grand larceny in the fourth degree and assault in the second degree in connection with the robbery and assault of Chezon Bousigard outside the Yankee Clipper bar in Phelps, New York on February 1, 2004. Following a jury trial in Ontario County Court, Hon. James R. Harvey, petitioner was convicted on one count of robbery in the second degree, one count of grand larceny in the fourth degree, and one count of assault in the second degree (T354-355).[2]

---

[1]      Bracketed references are to CM/ECF docket entries.

[2]      "T" refers to the trial transcript.

A.     **Trial Testimony**

On February 1, 2004, petitioner went to the bar around 12:00 a.m. (T244). Terry James Petty, Chezon Bousigard, his girlfriend, Elizabeth Mussaw, Anetra Carter and Sarah Beniamino were also at the bar (T69, 72, 149). Bousigard's ex-wife was petitioner's cousin (T71).

Petitioner testified that he was arguing with his girlfriend and was upset when he arrived at the bar (T244). However, he consumed no alcohol while in the bar (T246). Although he observed Bousigard in the bar, petitioner testified that he had no direct contact with him (T244). While in the bar, petitioner questioned Petty regarding money that Petty owed to him, but Petty did not have it (T246-47). Petitioner testified that he walked out of the bar with Petty at about 2:00 a.m. (T250). He then walked up to Bousigard, who was across the street, and said "what's up?", and Bousigard responded with what he thought was "fuck you" (T253). Upset at Bousigard's comment, petitioner admitted that he slapped Bousigard, pushed him up against a car door, and slapped him again (T182, 253-54, 279). Petty was directly behind petitioner when he slapped Bousigard (T255). Petitioner then claimed that he walked away. Id. It was not until later in the evening that he learned that Petty had taken Bousigard's phone, when he showed it to him. Id. When petitioner learned of this, he took the phone from Petty and tossed it in the parking lot. Id.. Although Petty had no money while he was at the bar, petitioner testified that Petty gave money to him after the incident with Bousigard (T278-79, 183).

In contrast to petitioner's version of events, Bousigard testified that while he was in the bar, he bought drinks for petitioner and Petty (T72). Bousigard testified that petitioner told him, "you are not leaving here with all of that money" (T76) and that Petty "was kind of like,

close to me; always, like sticking on me; like, I kind of felt his hands around me, like, the side of my pockets" (T77). Bousigard testified that he walked out of the bar around 1:45 a.m. (T77), and when he got to the car, it was locked because Beniamino was sleeping in the front seat (T79, 152). Petitioner approached him and said "give it up" and then struck him in the face (T79). At first Bousigard believed that petitioner hit him "by accident", but then petitioner hit him again (T80). Bousigard lost his balance, and when he fell, Petty began kicking him (T81). Bousigard testified that petitioner and Petty continued attacking him at the same time, repeating "where is it", referring to the money (T82). The fight moved three to four cars down (T83). Bousigard also heard Petty say, "I got the . . . phone", and petitioner replied, "I want the . . . money" (T85, 155). Although Bousigard lied to petitioner and told him that he lost the money, petitioner and Petty located the money and took it from Bousigard's pocket (T86-87). Mussaw observed the assault and also heard petitioner say "fuck the phone, I want the money" (T153-155).

Carter and Beniamino testified that following the incident Bousigard said that his phone was stolen, but that he had dropped his money (T196, 220-21).

## B. The Verdict

The jury found petitioner not guilty of robbery in the second degree (count one), but guilty of robbery in the second degree (count two), grand larceny in the fourth degree, and assault in the second degree (T355).

**C.     Sentence**

Petitioner, as a second violent felony offender, was sentenced to a determinate term of twelve years incarceration with 5 years post-release supervision on his second degree robbery conviction. He also received concurrent terms of 1 ½ to 3 years incarceration on his fourth degree grand larceny conviction and 5 years incarceration on his second degree assault conviction. November 24, 2004 Sentencing; Appendix, p. 28.

**D.     Appeals**

On appeal, petitioner argued that the evidence relating to "physical injury" required to sustain his conviction for robbery in the second degree was insufficient, the verdict was against the weight of the evidence, the court's <u>Sandoval</u> rulings were unfair, and his sentence was harsh and excessive. Respondent's Appendix [10], Ex. A. Petitioner's appeal was denied by the Appellate Division, Fourth Department (<u>People v. White</u>, 27 A.D. 3d 1187 (4th Dep't 2006), and leave to appeal was denied by the Court of Appeals (817 N.Y.S. 2d 634 (2006)).

**E.     Habeas Petition**

Petitioner asserts the same arguments raised in his appeal. Petition [1], pp. 6-8.

**ANALYSIS**

**A.     Exhaustion and Procedural Default**

A petitioner must exhaust all available state remedies, either on direct appeal or through a collateral attack on his conviction, before he may seek habeas relief in federal court.

28 U.S.C. §2254(b); Bossett v. Walker, 41 F. 3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). In order to exhaust all state remedies, "the petitioner must appraise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdemez v. Keane, 394 F. 3d 68, 73 (2d Cir. 2005), cert. denied, 544 U.S. 1025 (2005).

"When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process under §2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state form would be futile." Aparicio v. Artuz, 269 F. 3d 78, 90 (2d Cir. 2001). "This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred, federal habeas courts must deem the claims procedurally defaulted." Id.

Significantly, the "dismissal of a habeas claim on the ground that it was procedurally defaulted differs crucially from a dismissal for failure to exhaust state remedies. Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits." Id. Nevertheless, a claim can avoid procedural default if the petitioner shows "cause for the default and prejudice, or demonstrates that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)". Id.

Furthermore, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "permits a habeas court to reject a claim on the merits notwithstanding the fact that

it is unexhausted. 28 U.S.C. §2254(b)(2). However, there exists no complementary power to grant a habeas petition on an unexhausted claim". Id. at 91 n. 5.

**B.     Standard of Review**

A habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).
>
> "A determination of a factual issue made by a State court shall be presumed to be

correct", unless the petitioner rebuts this presumption by "clear and convincing evidence". 28 U.S.C. §2254(e)(1).

**C.     Weight and Sufficiency of the Evidence**

Petitioner argues that there is insufficient evidence that Bousigard sustained a physical injury as required for his robbery in the second degree conviction. According to petitioner, Bousigard sought no medical treatment as a result of the assault and "went about his business as usual after the alleged incident". Petition [1], p. 6. He also argues that the verdict was against the weight of the evidence. Id., p. 7. In response, respondent argues that weight of the evidence claims are not cognizable on habeas review, and that petitioner's sufficiency of the evidence challenge fails on the merits. Respondent's Memorandum of Law [9], Point I.

I agree that petitioner's "weight of the evidence" argument cannot be entertained. "Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding." Urruita v. Greene, 2007 WL 2484305, *3 (W.D.N.Y. 2007) (Siragusa, J./ Bianchini, M.J.).

Turning to whether the evidence supporting petitioner's conviction for robbery in the second degree was legally sufficient, "in a challenge to a state criminal conviction brought under 28 U.S.C. §2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). "The inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt . . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. at 318-19.

Physical injury is defined as "impairment of physical condition or substantial pain". N.Y. Penal Law §10.00(9). The prosecution offered ample evidence that Bousigard sustained a physical injury during the robbery. Bousigard testified that he was struck in the face a number of times, and then repeatedly punched and kicked by petitioner and Petty (T80-81). Mussaw also observed petitioner and Petty hitting and kicking Bousigard (T167). According to Bousigard he sustained a swollen and bloody eye (T147). Mussaw observed petitioner bleeding

-7-

from his eye and nose (T155), Carter observed his nose "bleeding a little bit" (T199), Beniamino observed an injury to his eye (T227), and Police Officer Paul Vanderlike observed him with a swollen eye (T154-55). In the weeks following the incident, he continued to experience pain in his eye and severe headaches (T96-97).

This evidence is legally sufficient to establish that he sustained a physical injury. *See* Foster v. Miller, 2007 WL 1893726, *8 (S.D.N.Y. 2007) (victim "was punched twice in the head and face sustaining a split lip, headaches that lasted for two or three days, and pain that persisted for a week and which he treated with Tylenol. This evidence fully satisfies the requirement for proving physical injury"); People v. Thomas, 226 A.D. 2d 120 (1st Dep't 1996), lv. denied, 88 N.Y. 2d 886 (1996) ("Legally sufficient was the evidence of physical injury, namely the complainant's testimony that as a result of defendant's unprovoked aggression of kneeing him in the groin and squeezing his testicles, he experienced such severe pain that he could not initially stand up and thereafter had stomach cramps and nausea for several days"). Therefore, I recommend that this aspect of the petition be denied.

    **4.**    **Sandoval Ruling**

Petitioner argues that the court's failure to preclude inquiry into his 1996 conviction for petit larceny "cause[d] prejudice to the defense". Petition [1], p. 7. Respondent argues that petitioner's claim regarding the Sandoval ruling is procedurally barred because it was not preserved and not presented in constitutional terms. Respondent's Memorandum of Law [9], Point II.

The Appellate Division found that "Defendant failed to object to County Court's 'ultimate' Sandoval ruling and therefore failed to preserve for our review his contention that ruling constitutes an abuse of discretion". People v. White, 27 A.D.3d at 1187. "New York's contemporaneous objection rule to preserve appellate review, New York Criminal Procedure Law §470.05(2), is an adequate and independent state procedural rule precluding review." Brown v. Walsh, 2009 WL 3165712, *4 (N.D.N.Y. 2009). "Petitioner may only seek habeas review if he shows 'cause for default and prejudice resulting therefrom.'" Wright v. Conway, 2009 WL 2982978, *8 (N.D.N.Y. 2009) (*quoting* Levine v. Commissioner of Correctional Services, 44 F. 3d 121, 126 (2d Cir. 1995)).

Even if petitioner's claim was not procedurally defaulted, I find that petitioner has not established that court's Sandoval ruling was of a constitutional magnitude. "'The Sandoval ruling is a matter of state law as to the admissibility of evidence, the purpose of which is to provide the defendant with a prospective ruling on the possible use of defendant's prior bad acts by the prosecution for the purpose of impeachment.' . . . Since the admission of a prior conviction is an evidentiary ruling, it 'is only redressable in a federal habeas corpus proceeding if there is a showing that the particular errors were of constitutional magnitude . . . . Evidentiary errors must be so pervasive as to have denied [petitioner] a fundamentally fair trial.'" Escalona v. Sears, 2008 WL 4534007, *10 (E.D.N.Y. 2008).

Petitioner's challenge to the Sandoval rulings centers on the admission of inquiry regarding the facts of his 1996 petit larceny conviction. Petitioner fails to explain why the Sandoval ruling denied him a fundamentally fair trial. Additionally, the evidence of his guilt is overwhelming. Petitioner admitted to authorities and testified that he struck Bousigard.

Additionally, Bousigard's testified that petitioner and his accomplice forcibly took Bousigard's money and phone, and Mussaw testified that petitioner said during the assault, "fuck the phone, I want the money". Thus, I find that the "admission of evidence of those prior convictions was not of such a constitutional magnitude so as to violate petitioner's constitutional right to a fair trial, particularly in light of the overwhelming evidence of petitioner's guilt." Escalona, 2008 WL 4534007 at *10. Therefore, I recommend that this claim for habeas relief be denied.

### 5. Harsh and Excessive Sentence

Petitioner argues that at the time of the crime he had a full-time job, lived within the law, the community supported his character and goals, and that his co-defendant received a lesser sentence of 7 years. Consequently, a reduced sentence "would be in the interest of justice and within the publics [*sic*] interest." Petition [1], p. 8. Respondent argues that petitioner's challenge to the length of his sentence is not cognizable on habeas review because it is within the legal permissible range prescribed by state law. Respondent's Memorandum of Law [9], Point III. I agree.

Petitioner does not argue that his sentence falls outside of the sentence authorized by the Penal Law. "Because Petitioner's sentence does not fall outside of the range authorized by New York's Penal Law, his claim challenging the severity of that sentence is not cognizable on federal habeas review and must be dismissed." Horn v. Herbert, 2006 WL 2806410, *8 (W.D.N.Y. 2006) (Skretny, J.). *See* White v. Keane, 969 F. 2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law").

To the extent petitioner is challenging his sentence as constituting cruel and unusual punishment in violation of the Eighth Amendment, this argument is likewise rejected. "The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime . . . . Federal courts should be reluctant to review legislatively mandated terms of imprisonment, and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare." Cummings v. Burge, 581 F. Supp. 2d 436, 453 (W.D.N.Y. 2008) (Larimer, J./Bianchini, M.J.).

I do not find this to be one of the "exceedingly rare" sentences that is grossly disproportionate to the severity of the crime. As discussed earlier, there was legally sufficient evidence to support his conviction. Considering the circumstances of the robbery, as well as petitioner's prior criminal history, I find petitioner's sentence to be appropriate. Therefore, I deny this aspect of the petition.[3]

**Certificate of Appealability**

For a Certificate of Appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make the required "substantial showing", the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". Rhagi v. Artuz, 309

---

[3] Here, petitioner was sentenced as a second violent felony offender pursuant to Penal Law §70.04, as opposed to a persistent felony offender pursuant to Penal Law §70.10. Thus, petitioner's claim is unaffected by the Second Circuit's recent decision in Besser v. Walsh, 601 F. 3d 163 (2d Cir. 2010), finding Penal Law §70.10 unconstitutional as a violation of the Sixth Amendment right to a jury trial.

F. 3d 103, 106 (2d Cir. 2002) (per curiam), cert. denied, 538 U.S. 950 (2003). Petitioner has made no such substantial showing of the denial of a constitutional right in this case.

## CONCLUSION

For these reasons, I recommend that petition for a writ of habeas corpus under 28 U.S.C. §2254 be denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I also recommend that a Certificate of Appealability not be issued.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by September 27, 2010 (applying the time frames set forth in Fed. R. Civ. P. 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with

the provisions of Rule 72.3(a)(3), may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED: September 8, 2010

                                                /s/ Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge